### In re TAMPA MEDICAL TOWER LIMITED PARTNERSHIP, Debtor.

Bankruptcy No. 91–14700–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 2, 1992.

Don M. Stichter, Tampa, Fla., John H. Harman, Silver Spring, Md., for debtor.

Richard J. McKay, Tampa, Fla., for Mutual of New York.

Assistant U.S. Trustee Sarah Kistler.

### ORDER ON MOTION TO DISMISS CHAPTER 11 CASE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case filed by Tampa Medical Tower Limited Partnership (Debtor). The Debtor's right to seek rehabilitation under this Chapter is challenged by The Mutual Insurance of New York (MONY). The Motion to Dismiss this Chapter 11 case is based on the contention of MONY that this Chapter 11 Petition was filed in bad faith which in turn would warrant a dismissal for "cause" pursuant to § 1112(b) or, in the alternative, that dismissal is proper because this Debtor cannot effectuate a plan of reorganization which, in turn, would also warrant a dismissal pursuant to § 1112(b)(2) of the Bankruptcy Code.

The facts which appear from the record and were established at the final evidentiary hearing are basically without dispute and are as follows.

The Debtor is a limited partnership. Its sole asset is an office building located in Tampa, Florida. The Debtor is not engaged in business and its sole activity is involvement in the ownership of the property involved in this Chapter 11 case. MONY is the holder of a first mortgage lien on the subject property. It is without dispute that the indebtedness, although it has not been established with finality, is certainly in excess of $12 million, although MONY asserts that the balance now due on the mortgage is in excess of $13 million. Be that as it may, there is no question that the "as is" value of this property at this time, as opposed to liquidation or stabilized value, is not more than $8,700,000.00. Based on this it appears that the secured claim of MONY is limited to that amount and it has an allowable unsecured claim between $3,300,000.00 and $4,300,000.00.

It is without dispute that the Debtor defaulted on the mortgage loan by failing to make the regular monthly payment due on March 1, 1991, and all subsequent payments. Shortly after the initial default, MONY accelerated all the amounts due on the mortgage loan and pursuant to *Fla. Stat.* 697.07 and an assignment of rents, demanded that the Debtor turn over or sequester all rents collected from the tenants. Mony then promptly instituted an action in the Circuit Court of Hillsborough County and sought to foreclose its mortgage. In the foreclosure action MONY filed an Emergency Motion and sought the appointment of a Receiver or, alternatively, an Order to Sequester the Rents. However, before the Circuit Court had the opportunity to consider the Motions, the Debtor filed its Petition for Relief under Chapter 11 which, of course, stopped any further proceeding in the state court by virtue of the automatic stay which is imposed by § 362(a) of the Bankruptcy Code upon filing.

There is hardly any doubt that the sole purpose of filing the Petition for Relief was to bring the foreclosure action to a halt and to prevent MONY to obtain the relief it sought at that time, i.e., the sequestration of rents and/or appointment of a Receiver.

It is without dispute the Debtor has no employees; the property is managed by a management company pursuant to the contract entered into between the Debtor and the management company prior to the commencement of this Chapter 11 case which contract is yet to be assumed or rejected as an executory contract pursuant to § 365 et seq. According to the Schedules filed by the Debtor, it appears that the Debtor has only three or four creditors other than MONY. Based on the schedules, the total indebtedness owed by this Debtor to other creditors, excluding MONY, is approximately $104,000.00 to $132,000.00, approximately $97,000.00 of which is due to one of the Debtor's general partners, Potomac Capital Corporation who, under the definition of § 101(31)(A)(iii) of the Code, is an insider. Other than MONY, the Debtor has only unsecured nonpriority creditors.

According to the representative of MONY, MONY will never vote for any plan proposed by this Debtor unless the plan provides for either an immediate repayment of all monies due to MONY or the Debtor's transfer of the property to MONY. Obviously, this Debtor is not in a position to propose such a plan because the former alternative is financially impossible and the latter alternative would eliminate all equity interests held in the Debtor by the Debtor's general and limited partners.

To overcome this unrefuted evidence, the Debtor presented testimony of a witness who testified that he is confident that if the Debtor is given a relatively short period of time, i.e., 30 to 90 days, it will be able to raise sufficient new equity capital to fully reinstate the mortgage loan due to MONY and thereafter, to pay the loan on a current basis and fully comply with the terms of the original mortgage. It is difficult to accept that this projection is realistic for the following reasons.

The limited partners of this Debtor already invested $9 million in this venture. The sole asset of the partnership, the medical office building, is only worth $8,700,000.00 at best. The property is encumbered by a mortgage securing a debt in the amount of $12 million or, according to

MONY, more than $13 million. The amount required to cure the existing arrearage due to MONY is approximately $1,600,000.00. At no time did this office building, even when operated as a medical office building, ever generate sufficient net cash flow to pay the regularly scheduled debt service to MONY. The picture is even more dismal now because some major tenants, physicians, etc., moved out and the reputation of the complex as a medical office building, while not completely lost, is tarnished.

Under these circumstances, this Court is constrained to reject completely the validity of this testimony and is of the opinion that the possibility of obtaining additional equity investment of a very substantial amount is nothing short of a pipe dream and lacks any credible evidence to support it.

MONY filed its initial Motion to Dismiss this Chapter 11 case on the grounds of bad faith filing shortly after the commencement of the case. In January, 1992, this Court denied MONY's initial Motion. The Order provided, however, that the Debtor shall have one single opportunity to file a confirmable Plan of Reorganization before the end of January. While it is true that the Debtor did file a Plan before the deadline fixed by the Court, it was not confirmable and was later amended in June, 1992. This Plan provided different treatment to MONY. At the hearing scheduled to consider the Debtor's Disclosure Statement, the Debtor proposed to further amend its Plan. While the original Plan purported to create multiple classes of creditors, it is clear that this case involves only two classes, one comprised of MONY's secured claim and the other comprised of all other unsecured claims. Clearly, the unsecured class is dominated by MONY and the Debtor would never be able to obtain the required affirmative vote of that class, even if the insider vote is reduced in amount, although it might obtain the requisite majority in number. This being the case, the likelihood of this Debtor to obtain confirmation of any Plan, except on paying MONY in full or transferring the property MONY, is not only remote but nil.

Thus, based on § 1112(b) of the Bankruptcy Code, it is appropriate to grant MONY's Motion to Dismiss and this Chapter 11 case shall be dismissed unless the parties of interest seek a conversion of this case to a Chapter 7 case within 10 days of the date of the entry of this Order.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion To Dismiss the Chapter 11 Case filed by Mutual Insurance of New York is hereby granted, and the case is dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor will have ten days from the date of the entry of this Order within which to convert this case to a Chapter 7 case under the Bankruptcy Code should it deemed so to be advised.

DONE AND ORDERED.